### JOSEPH DAVENPORT *vs.* J. A. and J. D. BUCKLAND.

B. was employed by several persons to go to Connecticut to purchase mulberry trees. After he had left for that purpose, defendants forwarded him two promissory notes of $300 each, made by them and payable to plaintiff, with directions to purchase *six* hundred dollars' worth of trees for them; they enclosed a letter for plaintiff authorizing him "*on delivery* of said trees" to B. "to date said notes," which were then without date. B. purchased no trees *for defendants*, but he forwarded them *five* hundred dollars worth of the trees he had bought of plaintiff for others, and defendants planted these. B. afterwards gave plaintiff defendants' two notes along with several other securities in payment of all the trees he had bought, and plaintiff dated these notes *as of the same date as defendants' letter*. After this B. for the first time informed defendants what had been done, when they immediately dissented. Plaintiff brought suit on one of the notes. *Held*, that he could not recover.

The trees belonged to the person for whom they were purchased, and B. had no authority as the agent of any one to sell them to defendants; they never made a contract with plaintiff, and received the trees in ignorance of the facts. B. was their special agent with a limited authority, which had been departed from in the amount of trees sent them, and in the date affixed to their notes; and on B.'s informing them what had been done, they did not ratify his acts, but dissented, as they had a right to do.

ASSUMPSIT tried at the Genesee circuit in March, 1841, before DAYTON, Cir. J. The suit was on a promissory note as follows: " $300. One year from date value received we jointly and severally promise to pay J. Davenport or order three hundred dollars at the bank of Genesee with use. South Barre, April 23, 1839. (Signed) J. A. Buckland, J. D. Buckland." The note was made under the following circumstances. In the spring of 1839, one Jonathan K. Barlow was about to leave his residence at Bethany in the county of Genesee and go to Connecticut as the agent of a number of persons to purchase mulberry trees, and was to be furnished with notes, bonds and mortgages to pay for the trees. About the first of April the defendants called on Barlow and had a conversation on the subject of his buying trees for them as well as others, and proposed to see him again before he left—nothing then being concluded on between them. About ten days afterwards Barlow left for

Connecticut, not having heard any thing further from the defendants. He went to Connecticut to purchase $9000 worth of trees from the plaintiff for those who had sent notes and other securities by him; but did not purchase so many as he had originally intended, and *did not purchase any for the defendants*—not having received any instructions to do so. Barlow returned home about the 15th May, and then learned from his wife that the defendants had sent him some notes, and that she had forwarded them to him in Connecticut. About ten days afterwards the plaintiff came up and told Barlow there were some papers for him in the post office at Hartford, and Barlow gave the plaintiff an order to take the papers from the post office. In August or September following the plaintiff came up again, and presented to Barlow the papers taken from the post office at Hartford. One was the note on which this suit was brought, and there was another note of the same amount, making together $600. On the same sheet of paper with the notes there was a letter from the cashier of a bank, dated April 23, 1839, stating that the defendants' notes would be good. Then follows a letter from the defendants in these words: "Mr. Davenport, Sir, If Dr. Jonathan K. Barlow thinks proper to purchase of you for us mulberry trees to the amount of the above notes, on delivery of said trees to said Barlow we do hereby authorize and empower you to date the above notes. South Barre, April 23, 1839. (Signed) J. A. Buckland, J. D. Buckland." The notes were not dated when the plaintiff brought them to Barlow.

When Barlow got home with the trees in May, some of the persons for whom he had bought trees did not want, and did not take them; and Barlow learning from his wife that the defendants had sent on notes, he sent by his son $500 worth of the trees to the defendants, but he did not see the defendants until long afterwards. The defendants planted the trees in their garden.

When the plaintiff came up in August or September, Barlow turned out the notes of the defendants to the plaintiff towards the $9000 worth of trees he had purchased for other persons in April or May. Barlow dated the notes "April

23, 1839," because, as he said, that was the direction in the defendants' letter as he understood it. He made an indorsement on the notes as follows: "I certify that I dated the within notes and delivered them agreeable to the within directions. J. K. Barlow;" and then delivered them to the plaintiff. Up to this time Barlow had not seen the defendants. When he afterwards saw them and informed them what had been done they immediately dissented. They never paid Barlow any thing for the trees. Under the directions of the judge the jury found a verdict for the plaintiff for the amount of the note and interest, subject to the opinion of this court on a case to be made by the plaintiff.

*J. H. Martindale*, for plaintiff.

*H. R. Selden*, for defendants.

*By the Court*, BRONSON, J. When Barlow returned home with the trees in May, none of the property belonged to the defendants, for the plain reason that no part of it had been purchased for them, or on their account. All of the trees had been purchased for other persons, to whom the property then belonged. The notes and the defendants' letter of the 23d of April were probably in existence when the purchase was made; but that fact was unknown to Barlow at the time, and until after his return from Hartford. Still, if he had actually purchased $600 worth of trees for the defendants, it is possible that this might have been deemed a good execution of the power, although the agent did not know at the time of its existence. But it is not necessary to say how that would be. It is enough that no trees were in fact purchased for the defendants. They were all bought for other persons, to whom the property belonged at the time it arrived in Bethany. Thus far there is no contract between the plaintiff and the defendants.

Now let us look one step further. Barlow found soon after his return that some of the owners—to the extent of $500 worth—did not want their trees, and they did not take them. Barlow therefore sent those trees to the defendants, who

received and planted them; but they did it in total ignorance of the facts. When the trees were sent to the defendants they did not belong to the plaintiff, because he had sold them some time before to other persons, and no arrangements between Barlow and the owners could re-transfer the property to the plaintiff without his assent. The precise nature of the transaction between Barlow and the persons for whom he had purchased the trees does not appear. But it must have been one of two things. He either purchased the trees from the owners, and then acted for himself in sending them to the defendants; or else he consented to aid the owners in shifting off the property on to the defendants. It is not important in this action to inquire which of these two things were done, for in either case the property sent to the defendants did not belong to the plaintiff. It belonged either to Barlow or to the individuals for whom the trees had originally been purchased. It is highly probable that the defendants received the trees on the supposition that they came from the plaintiff under the authority sent to Barlow; but this mistake could not alter the facts.

By receiving and planting the trees the defendants made no contract of any kind with the plaintiff. If there was a contract with any body, it was with the legal owner, and then it could be no more than an implied obligation to pay what the property was reasonably worth. I do not say that Barlow or his principals—whichever was the owner—could maintain assumpsit. Probably their remedy would be an action of trover, if the defendants should refuse to give up the trees on demand made. That question need not, however, be considered. It is enough that the defendants were under no obligation to the plaintiff.

The rights and liabilities of the parties had now become fixed, and the subsequent transactions between Barlow and the plaintiff, when the latter came up in August or September, could impose no obligation upon the defendants. Barlow was never any thing more than a special agent for the defendants. He was only commissioned to do a single act, and the time had now gone by when it was contemplated that the act should be done. His authority as the agent of

the defendants was at an end, and there has been no ratification of his acts. On the contrary, when the defendants were told what had been done they immediately dissented.

It is said that Barlow in his negotiations with the persons for whom the trees were originally purchased, assumed to act as the agent of the plaintiff, and that as such agent he rescinded the sale, and then sent the trees to the defendants; and that the plaintiff afterwards adopted and ratified this assumed authority when he received the notes. But this argument all rests on the assumption that Barlow undertook to act as the agent of the plaintiff, when that fact does not appear. So far as appears, Barlow when he sent the trees to the defendants was either acting for himself, or for the persons on whose account the property had been purchased, and not for the plaintiff. It was not, therefore, a transaction which the plaintiff could adopt and make his own.

The truth of the matter was probably this. When Barlow got back with the trees some of his principals began to doubt the success of the speculation, and learning that the defendants had sent on notes, a contrivance was got up to shift off the property upon the defendants. But finding that neither Barlow nor his principals could enforce the notes, and that if they could recover at all against the defendants it would only be upon a *quantum meruit*, the plaintiff was called in three or four months afterwards; and he seems not to have cared where the money came from provided he got his pay for the property. During all these movements the defendants were kept in total ignorance of the true state of the case. The moment they learned what had been done, they said, as they had a right to say, we will have nothing to do with the transaction. And whether the plaintiff is now suing for himself, or as the trustee for others, he can not maintain this action. It is a suit on one of the notes, not upon an implied undertaking to pay what the trees were reasonably worth, though I am not prepared to say that the plaintiff could recover in any form.

In addition to what has already been said, there are some other facts which show that the authority has not been pursued. This special agency was to purchase mulberry trees

Davenport v. Buckland.

"to the amount of the above notes," which was *six* hundred dollars, and Barlow only sent trees to the amount of *five* hundred dollars. And although the defendants received the trees, they did it in ignorance of the fact that the whole quantity was not sent. Again, although only five sixths of the property was sent, both of the notes were delivered to the plaintiff. That was not following the power.

There was another departure from the authority. The notes were sent without a date, and were to be dated "on delivery of said trees to said Barlow." It is quite obvious that the date should have been of the day when the purchase was consummated by a delivery of the property. It affected the term of credit, and it is absurd to suppose that the defendants intended the notes should bear even date with the power, whenever the purchase might be made. If such had been their purpose they would have dated the notes themselves. The only way in which the power can be made to bear such a construction is, by reading its date as a part of the authority; but they are very different things. The one tells us when the power was made, and the other how it was to be executed. As the defendants have not been treated fairly, I do not regret that this blunder has happened.

On the whole I think this action can not be maintained.

Judgment for defendants.